UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LETHORNIA J. WHITICAR, JR. | CIVIL ACTION |
| VERSUS | No. 24-1287 |
| PARISH HOSPITAL SERVICE DISTRICT FOR THE PARISH OF ORLEANS, DISTRICT A D/B/A/ NEW ORLEANS EAST HOSPITAL AND LOUISIANA CHILDREN'S MEDICAL CENTER D/B/A LCMC HEALTH | SECTION: "J"(2) |

## ORDER & REASONS

Before the Court are Defendants Louisiana Children's Medical Center d/b/a LCMC Health and Parish Hospital Service District for the Parish of Orleans, District A d/b/a New Orleans East Hospital ("NOEH"), (collectively referred as "Defendants" or "LCMC")'s *Motion to Dismiss Plaintiff's Second Amended Complaint* **(Rec. Doc. 29)**, an opposition thereto (Rec. Doc. 30), and a reply (Rec. Doc. 31). Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, LCMC seeks dismissal with prejudice of Plaintiff's remaining claim for retaliation under 42 U.S.C. § 1981. Having considered the motion and memoranda, the record, and the applicable law, the Court finds that the motion should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

As previously stated in a prior Order & Reasons, Plaintiff, Lethornia J. Whiticar, Jr., an African American male, was employed by LCMC within its Plant Operation Department ("POD") at the Parish Hospital Service District for the Parish

of Orleans, District A d/b/a New Orleans East Hospital (hereinafter "NOEH"). Whiticar's immediate supervisor was the POD's Facilities Director, Karl Warner ("Warner"), a Caucasian male.

During his employment, Whiticar performed his job without complaint and advanced from an Engineer II to a First Class Engineer (Engineer I) and eventually becoming LCMC's Chief Engineer. Warner evaluated Whiticar's job performance annually in the fall of each year and he had never received a poor performance review.

When Whiticar became LCMC's Chief Engineer, "Warner treated Whiticar as if Defendants had no enforceable workplace policy prohibiting race-based discrimination." (Rec. Doc. 28, at ¶ 9). Warner failed or refused to treat Whiticar in a similar manner in which Warner treated LCMC's previous Chief Engineer, who was a Caucasian male. *Id.* Specifically, Whiticar alleges Warner failed and/or refused to: acknowledge him as LCMC's Chief Engineer; inform him about ongoing projects or his job duties and responsibilities as Chief Engineer; provide him access to certain areas within the POD; and allow him to "step-up" as acting Director over the department as routinely done with the prior Chief Engineer. *Id.* In sum, Warner "treated Whiticar with disdain even though Whiticar continued to meet or exceed the expectations of his position." *Id.* at ¶ 10.

In the latter half of 2022, Warner informed LCMC of his retirement. After Warner's announcement, Warner evaluated Whiticar's job performance in September 2022, in which Whiticar either met or exceeded the requirements of his position. Thereafter, an LCMC executive informed Whiticar that he would become LCMC's

next Facilities Director and be provided with a 6-month director training/orientation program.

When Warner found out, "he was furious and vehemently disagreed with [LCMC's] decision. He did not want an African American to replace him." *Id.* at ¶ 15. Rather than accepting the decision, Warner attempted to convince LCMC to select his office coordinator, a Caucasian female, as Facilities Director, "even though her employment history and/or educational background did not satisfy the minimum requirements to become [LCMC's] Facilities Director." *Id.* at ¶ 16.

Moreover, Warner "began verbally undermining Whiticar's character, work ethic, job performance and mental capacity in the workplace." *Id.* at ¶ 17. Warner allegedly sabotaged equipment, blaming Whiticar for the equipment's failure. Additionally, Warner openly criticized Whiticar's verbal and written communication skills and mental aptitude.

On November 24, 2022, Whiticar reported his concerns to LCMC's Human Resources representative, regarding Warner's behavior and informed the HR representative that "Warner did not want an African American to become [LCMC's] next Facilities Director and that Warner was treating him unfairly because of his race." *Id.* at ¶ 19.

Subsequently, on January 13, 2023, Warner decided to evaluate Whiticar's job performance even though Warner had already completed Whiticar's annual review in September. Unlike the September 2022 performance evaluation, Warner gave him a poor job performance rating. "According to Warner, Whiticar was no longer

3

satisfactorily performing his job duties and responsibilities. . .and was summarily demoted from his Chief Engineer position to Engineer I." *Id.* at 23. This was Whiticar's first ever poor performance rating.

LCMC eventually hired a Caucasian male to be LCMC's Facilities Director.

In May 2024, Whiticar filed suit for race-based discrimination (i.e., failure-to-promote) and retaliation pursuant to 42 U.S.C. § 1981, naming NOEH as the defendant. (Rec. Doc. 1, at ¶ 20). A First Amended Complaint was filed, naming LCMC as a defendant. (Rec. Doc. 18).

Previously, Defendants moved to dismiss Whiticar's First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing (1) Whiticar's claims are time-barred, and (2) Whiticar failed to plead sufficient facts to make out a § 1981 retaliation claim. (Rec. Doc. 22, at 1). Granting in part and denying in part Defendants' motion, the Court dismissed Whiticar's § 1981 failure-to-promote claim as time barred and ordered Whiticar to file a second amended complaint "*clearly* alleging his § 1981 retaliation claim" and to put his best retaliation case forward. (Rec. Doc. 27, at 9–10). At the same time, the Court permitted LCMC to refile its motion to dismiss for failure to plead the retaliation claim. *Id.* The Second Amended Complaint was timely filed. (Rec Doc. 28).

Defendants now file the instant motion, seeking dismissal of Whiticar's remaining § 1981 retaliation claim, arguing the Second Amended Complaint fails to sufficiently plead a § 1981 retaliation claim. (Rec. Doc. 29-1, at 1). Specifically, LCMC argues Whiticar failed to plead any facts establishing the causal link between his

alleged statements to LCMC's HR representative and Warner's conduct. (Rec. Doc. 29-1, at 5).

In response, Whiticar argues, in sum, the Second Amended Complaint "adequately pleads facts which, taken as true. . ., should support a judgment in his favor as to his § 1981 retaliation claim." (Rec. Doc. 30, at 3).

## **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). However, "'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citation omitted).

## **DISCUSSION**

The Court finds the Second Amended Complaint sufficiently alleges facts, interpreted in light favorable to Whiticar, to state a claim of relief under § 1981 for retaliation that is plausible on its face.

Section 1981 includes "complaint[s] of retaliation against a person who has complained about a violation of another person's contract-related 'right.'" *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021), *as revised* (Nov. 26, 2021) (cleaned up) (citations omitted). To state a claim for retaliation under § 1981, Whiticar must allege "(i) he engaged in a protected activity; (ii) an adverse employment action occurred; and (iii) a causal link exists between the protected activity and the adverse employment action." *Wantou v. Wal-Mart Stores Texas, LLC.*, 23 F.4th 422, 436–37 (5th Cir. 2022) (citations omitted). Retaliation claims under § 1981 use the "same rubric of analysis" as Title VII. *Scott*, 16 F.4th at 1209.

Here, Defendants only argue the Second Amended Complaint fails to plead the required causation element of a § 1981 retaliation claim (i.e., a causal link exists between the protected activity and the adverse employment action). (Rec. Doc. 29-1, at 5). Relying on caselaw that temporal proximity, standing alone, cannot be sufficient proof of causation, Defendants argue Whiticar "merely implies causation by alleging that his demotion occurred after he reported his concerns to HR." (Rec. Doc. 29-1, at 5). The Court will only address the causation element that is at issue.

"The existence of a causal link between protected activity and an adverse employment action is a 'highly fact specific' and difficult question." *Smith v. Xerox*

*Corp.*, 371 F. App'x 514, 520 (5th Cir. 2010) (citation omitted). "[I]ndicia of causation may be seen in factors such as: (1) the employee's past disciplinary record, (2) whether the employer followed its typical policy and procedures in terminating the employee, and (3) the temporal proximity between the employee's conduct and termination." *Id.*

The Court considers the causation factors. First, Whiticar's past disciplinary record (prior to the January 2023 performance evaluation) was absent of poor performance, exhibiting that Whiticar "performed his job duties without compliant and carried out his responsibilities in strict complaince with Defendants' policies and procedures."[1] Whiticar advanced through the ranks within the department. Moving on to the second factor, while there are no facts alleged as to the specific policy and procedure when demoting an employee at Defendants' facility, Warner failed to follow the typical policy of an annual performance review. Only four months after Whiticar's September 2022 review, Warner gave Whiticar a "second" performance evaluation in January 2023, such reviews typically occurred in the fall of each year. The January 2023 evaluation resulted in Whiticar's first ever poor performance evaluation and the first time Whiticar received two evaluations within four months.[2] Prior to this, Warner had neither given Whiticar a poor job performance evaluation; demoted Whiticar; nor disqualified him from receiving a promotion. As for the temporal proximity factor, only after Whiticar complained to HR that Warner was treating him unfairly because of his race, did Warner's behavior change. Having considered the factors, the Court finds the Second Amended Complaint sufficiently pleads factual

---

[1] (Rec. Doc. 28, at ¶ 7).
[2] *Id.* at ¶ 24.

7

content allowing the Court to "draw the reasonable inference that the [Defendants] [are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the motion is **DENIED**.

New Orleans, Louisiana, this 6th day of August, 2025.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE